IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| CAPGAIN PROPERTIES INC. and BRIAN KNIGHT, | ) ) ) |
| Plaintiffs, | ) ) |
| vs. | ) Case No. 15 C 9234 ) |
| LANDMASTER PARTNERS, LLC, | ) ) |
| Defendant. | ) |

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

CapGain Properties Inc. and Brian Knight have sued Landmaster Partners, LLC for breach of contract. Landmaster has moved to dismiss for lack of personal jurisdiction, improper venue, and failure to state a claim. For the following reasons, the Court denies Landmaster's motion.

## Background

CapGain and Knight, CapGain's president and chief executive officer, have brought suit against Landmaster alleging breach of contract. The Court has jurisdiction based on diversity of citizenship.

The contract at issue arose out of negotiations by which CapGain sought to acquire oil and gas leases owned and held by Landmaster. These negotiations began in mid-November 2014 and included telephone calls and in-person meetings at CapGain's offices in Lake in the Hills, Illinois. In anticipation of a transaction, the parties executed a term sheet on February 27, 2015. The term sheet contained the terms for

transfer of Landmaster's rights in three oil and gas leases located in Texas in return for CapGain's transfer of stock and debenture to Landmaster. The term sheet also included other negotiated terms, including tasks that each party agreed to perform to effectuate the term sheet's provisions.

In April 2015, the parties negotiated and executed a term sheet extension agreement. The extension postponed the timeline for completing the transaction, reiterated the parties' prior responsibilities contained in the original term sheet, and added new responsibilities. The extension agreement also added language regarding termination of the parties' agreement.

In their complaint in this lawsuit, plaintiffs allege that Landmaster terminated the parties' agreement in violation of termination provisions contained in the term sheet extension. Landmaster has moved to dismiss under Federal Rule of Civil Procedure 12(b)(2) for lack of personal jurisdiction, Rule 12(b)(3) for improper venue, and Rule 12(b)(6) for failure to state a claim.

## Discussion

**1.    Personal jurisdiction**

Landmaster, a Florida corporation with offices in Florida and Texas, argues first that personal jurisdiction is lacking. Plaintiffs have the burden to show that personal jurisdiction over Landmaster exists. *Tamburo v. Dworkin*, 601 F.3d 693, 700 7th Cir. 2010). When, as in this case, a court is ruling based on a motion to dismiss based on written materials rather than an evidentiary hearing, the plaintiff need only make out a prima facie case of personal jurisdiction. *Id.*; *see also Purdue Research Found. v. Sanofi-Synthelabo, S.A.*, 338 F.3d 773, 782 (7th Cir. 2003). The Court considers the

2

complaint's factual allegations and draws reasonable inferences from those allegations in plaintiffs' favor. *Sprint Spectrum L.P. v. City of Carmel*, 361 F.3d 998, 1001 (7th Cir. 2004). If the parties submit supporting affidavits, any conflicts in the affidavits are resolved in plaintiffs' favor. *See Turnock v. Cope*, 816 F.2d 332, 333 (7th Cir. 1987); *see also RAR, Inc. v. Turner Diesel, Ltd.*, 107 F.3d 1272, 1275 (7th Cir. 1997).

Under the Illinois long-arm statute, personal jurisdiction is proper if it would be permissible under either the Illinois Constitution or the United States Constitution. 735 ILL. COMP. STAT. 5/2-209(c); *Mobile Anesthesiologists Chi., LLC v. Anesthesia Assocs. of Houston Metroplex, P.A.*, 623 F.3d 440, 443 (7th Cir. 2010). The Seventh Circuit has held that there are no substantive differences between federal and Illinois state limits on personal jurisdiction. *Hyatt Int'l Corp. v. Coco*, 302 F.3d 707, 715-16 (7th Cir. 2002). Thus the Court need address only federal constitutional limits on personal jurisdiction. *Id.*

Under the Constitution's Due Process Clause, personal jurisdiction may extend to a defendant that has minimum contacts with the forum state such that exercising jurisdiction over the defendant would not offend "traditional notions of fair play and substantial justice." *Id.* at 716; *Int'l Shoe Co. v. Washington,* 326 U.S. 310, 316 (1945). Plaintiffs argue only for specific jurisdiction, which requires the plaintiff's claim to "aris[e] out of or relate[ ] to" the defendant's contacts with the forum. *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 (1984).

Starting in November 2014 and over the course of several months, representatives of CapGain and persons affiliated with Landmaster negotiated a transaction involving the purchase of three Texas oil and gas leases held by

3

Landmaster. Jonathan Quinn (an Illinois resident) and Jeff Zimmerman, both Landmaster interest holders, had in-person meetings with CapGain representatives at CapGain's offices in Lake in the Hills, Illinois to initiate the transaction. On February 27, 2015, after much negotiation, the parties executed a binding term sheet under which Landmaster's rights in the oil and gas leases would be transferred in return for CapGain stock and a convertible debenture.

The question is whether the in-person meetings in Illinois between Quinn and Zimmerman, both Landmaster interest holders, and CapGain representatives to negotiate the term sheet are properly considered for purposes of establishing personal jurisdiction over Landmaster. Personal jurisdiction over an entity is appropriate when minimum contacts are established through an agent of the entity. *Wisconsin Elec. Mfg. Co. v. Pennant Prods., Inc.*, 619 F.2d 676. 677-78 (7th Cir. 1980). To establish agency, the alleged agent must have either actual or apparent authority from the principal, or the principal must "ratify" the unauthorized agent's actions through later conduct. *Anetsberger v. Metro, Life Ins. Co.*, 14 F.3d 1226, 1234 (7th Cir. 1994); *see also ABN AMRO, Inc. v. Capital Int'l Ltd.*, 595 F. Supp. 2d 805, 821 (N.D. Ill. 2008). A principal may ratify an unauthorized agent's actions by later assuming the benefits of an action by the agent that was unauthorized at the time it was undertaken. *Advance Mortg. Corp. v. Concordia Mut. Life Ass'n*, 135 Ill. App. 3d 477, 484, 481 N.E.2d 1025, 1030-31 (1985) ("even if we were to find that Advance, as an agent for Concordia, acted outside its authority, Concordia retained the benefits of Advance's action such as to constitute a ratification thereof."). In such a case, ratification serves as the functional equivalent of up-front authority. *Id.*

Landmaster argues that Quinn and Zimmerman were not agents or officers of Landmaster at the time of the in-person meetings with CapGain's representatives in Illinois. That may be so. But CapGain has made a prima facie showing that Landmaster later ratified the actions of Quinn and Zimmerman by executing the term sheet. Moreover, Landmaster concedes in its reply brief that once it became apparent that a transaction with CapGain was possible, Landmaster followed up by phone and e-mail with Michael Loprieno, a representative and board member of CapGain. These discussions between CapGain and Landmaster representatives culminated in the execution of the term sheet and the later term sheet extension agreement. Landmaster, therefore, took several affirmative steps toward assuming the benefits of Quinn and Zimmerman's initial dealings in Illinois with representatives of CapGain, thereby ratifying those actions. It is therefore appropriate to consider Quinn and Zimmerman's contacts with Illinois for purposes of establishing personal jurisdiction over Landmaster. *See id.*

Landmaster also argues that even if Quinn and Zimmerman's actions are considered, they are insufficient to establish the minimum contacts required for personal jurisdiction. "Personal jurisdiction in a breach-of-contract suit generally turns on whether the defendant purposefully availed himself of the privilege of conducting business in the forum state." *Felland v. Clifton*, 682 F.3d 665, 674 (7th Cir. 20120. "[O]nly the dealings between the parties in regard to the disputed contract" are relevant. *Id.*; *see also RAR, Inc.,* 107 F.3d at 1278. Illinois courts consider several factors when determining whether a defendant has met the purposeful availment requirement in a breach of contract case, including who initiated the transaction, where the contract was formed, and where performance of the contract was to take place. *Viktron Ltd. P'ship v.*

5

*Program Data Inc.*, 326 Ill. App. 3d 111, 117, 759 N.E.2d 186, 193 (2001)

The in-person meeting in Illinois between Quinn, Zimmerman, and representatives of CapGain certainly constituted dealings between the parties related to the contract. *Id.* A single meeting may be enough in an appropriate case to establish the necessary minimum contacts. *D.S. Am. (East) Inc. v. Elmendorf Grafica, Inc.*, 274 Ill. App. 3d 643, 650, 654 N.E.2d 472, 477 (1995). Moreover, the record reflects that it was Quinn who initially reached out to CapGain representatives about purchasing oil and gas leases. Zimmerman and Quinn later communicated with authorized Landmaster representatives Brett Wagman, Richard Quintal, and Suzanne Ruffini, who then reached out to CapGain representatives, including Knight, to pursue the proposed transaction. Quinn, Zimmerman and CapGain representatives met at CapGain's office in Lake in the Hills, Illinois to negotiate the terms of the transaction. Those terms were later incorporated into the term sheet. Even though the leases being sold were in Texas, the record before the Court reflects that Landmaster, via its ratification of the actions of Quinn and Zimmerman, initiated dealings in Illinois that led to the formation of a contract in this state.

For these reasons, the Court concludes that CapGain has made out a prima facie case of personal jurisdiction over Landmaster.

**2.      Venue**

Venue is proper in a district where a substantial part of the events giving rise to the claim occurred. 28 U.S.C. § 1391(b)(2). The Northern District of Illinois is a proper venue for this case because a substantial portion of the events giving rise to the claims in this case—the same meetings and contacts discussed in the previous section of this

6

decision—took place in Lake in the Hills, which is in this district. Landmaster contends that these meetings did not involve authorized representatives of Landmaster. But as the Court has already discussed, Landmaster ratified the actions of Quinn and Zimmerman, and thus those actions count for venue purposes just as they do for purposes of personal jurisdiction. As a result, venue is proper in this district.

### 3. Failure to state a claim - CapGain

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a complaint's factual allegations must be sufficient state a claim for relief that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The Court takes as true all well-pleaded factual allegations in the complaint and draws reasonable inferences from those facts in favor of the plaintiffs. *See, e.g., McCauley v. City of Chicago*, 671 F.3d 611, 616 (7th Cir. 2011).

A breach of contact claim under Illinois law requires the plaintiff to establish the existence of a valid and enforceable contract, performance of the contract by the plaintiff, a breach of contract by the defendant, and a resulting injury to the plaintiff. *Priebe v. Autobarn, Ltd.,* 240 F.3d 584, 587 (7th Cir. 2001). Landmaster argues that the February 24, 2015 term sheet was not binding on the parties because it was "nothing but a term sheet" that contemplated a later, formal agreement. CapGain argues that the term sheet was a binding agreement, as evidenced by its statement that it is "intended to be binding on all parties." Compl., Ex. A at 1.

CapGain alleges that all elements required for a valid and enforceable contract under Illinois law were present in the term sheet. CapGain also alleges that it performed by taking the steps to carry out the transaction as provided under the term

7

sheet and that Landmaster breached the contract when it terminated the agreement without first adhering to certain obligations contained in the term sheet and the term sheet extension. In particular, CapGain contends, the parties established a very specific and binding termination provision in term sheet extension agreement. *See* Compl., Ex. C. Finally, CapGain alleges that it suffered a loss of $8,500,000.00 in lost value and $2,266,313.91 as part of a judgment against CapGain by Statesman Capital Corporation due to Landmaster's breach. These allegations are sufficient for CapGain to state a plausible breach of contract claim against Landmaster.

### 4. Failure to state a claim - Knight

Knight alleges that he suffered injury in the amount of $380,000 as a result of Landmaster's breach of the term sheet, because his own shares were to be purchased as part of the transaction with CapGain. Knight's contention is that he was, at a minimum, a third party beneficiary of the contract. Knight has sufficiently alleged that he was an intended third party beneficiary of the term sheet, which expressly contemplated Landmaster's purchase of his shares. Compl., Ex. A at 1. And there is no indication of any failure of performance on Knight's part; he alleges that he made his shares available as the contract contemplated. The Court therefore declines to dismiss Knight's claim under Rule 12(b)(6).

### Conclusion

For the reasons stated above, the Court denies defendant's motion to dismiss [dkt. no. 7] and directs defendant to answer the complaint by no later than June 14, 2016. Rule 26(a)(1) disclosures are to be made by the same date. The case is set for a status hearing on June 23, 2016 at 9:00 a.m. in chambers, for the purpose of setting a

discovery and pretrial schedule. Counsel are directed to discuss and attempt to agree upon a schedule to propose to the Court.

Date: May 29, 2016

_____
MATTHEW F. KENNELLY
United States District Judge