IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

CAPGAIN PROPERTIES INC. )
and BRIAN KNIGHT, )
 )
    Plaintiffs, )
 )
    vs. ) Case No. 15 C 9234
 )
LANDMASTER PARTNERS, LLC, )
 )
    Defendant. )

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

    CapGain Properties Inc. and its president and CEO, Brian Knight, filed suit against Landmaster Partners, LLC, accusing Landmaster of breach of contract. Landmaster has moved for summary judgment on the ground that plaintiffs cannot meet all the elements for a breach of contract claim under Illinois law. Plaintiffs have also asked the Court to re-open discovery. For the reasons stated below, the Court denies plaintiffs' request and grants Landmaster's motion for summary judgment.

### Background

    CapGain is a Canadian corporation with its principal place of business in McHenry County, Illinois. Landmaster is a Florida corporation. According to the complaint, CapGain and Landmaster began negotiations in November 2014 for a contract under which CapGain would acquire oil and gas leases owned by Landmaster. In February 2015, the two companies entered into a term sheet "to establish definitive terms for a reverse merger takeover of [CapGain] by Landmaster." Def.'s Mot. for

Summ. J. on Pls.' Compl., Ex. A (Term Sheet) at 1. The term sheet required CapGain to complete the following tasks by March 31, 2015: (a) the completion of CapGain's pending audit; (b) the removal of the current trading halt on CapGain stock; (c) the completion of a 10 to 1 rollback of CapGain stock; and (d) the closing of CapGain's current office located in Lake in the Hills, Illinois. *Id.* In exchange, Landmaster was to assign certain interests in its oil and gas leases to CapGain five days after these tasks were completed. *Id.* Landmaster was also to purchase Knight's shares in CapGain at a price of $380,000. *Id.*

According to Landmaster, CapGain had difficulty performing its obligations by March 31. For this reason, the parties executed a term sheet extension agreement in April 2015. *See* Def.'s Mot. for Summ. J. on Pls.' Compl., Ex. B (Term Sheet Extension). The agreement provides in part:

> Capgain [sic] understands this is not a perpetual agreement as does Landmaster Partners, Inc. and both parties will move to complete the transaction as quickly as possible.
>
> Accordingly CapGain will be held to the following dates:
> A. Completion of the CapGain Audit prior to June 15, 2015.
> B. On or before June 15, 2015 reinstatement of trading.
> C. Closing of the office in Lake in the Hills (already done).
> D. Completion of 10:1 rollback. (Note: that CapGain will complete all forms to do this but not actually do it until Landmaster has its N51-101 finished. CapGain only wishes to take this step in conjunction with the merger, and without stock support worries as to the price of the shares, so needs to be assured of its ability to complete the merger before completing said item).
>
> Accordingly Landmaster will also be held to the following dates:
> A. Accomplish the N51-101 report by June 15, 2015.
> B. Provide nominated list of officers and directors. Including filling out the appropriate PIF forms within fourteen days of this agreement being signed.
> C. Provide a draft purchase agreement within two weeks of this

2

agreement.

*Id.* at 1. The agreement further indicates:

> Accordingly neither party may terminate the agreement and it does not become null and void until after June 15, 2015 and in the event that the terminating party has dutifully completed their own requirements. If the agreement is terminated due to time running out, neither party shall have any liability or liabilities to the other for any and all causes or claims. (By way of example if Landmaster fails to complete their N51-101 in time then CapGain could not terminate the contract unless all of its own items are completed and it is after June 15, 2015).

*Id.* at 2.

The parties dispute whether either company completed its obligations by the June 15 deadline. On September 29, 2015, attorneys for Landmaster sent CapGain a letter indicating that it was terminating the agreement. The letter stated that it had become clear that CapGain had not complied with the conditions in the term sheet nor was it capable of doing so. Pls.' Resp. in Opp'n to Def.'s Mot. for Summ. J. on Pls.' Compl. (Pls.' Resp.), Ex. E (Termination Letter) at 1. The letter specifically noted that "the audit completion condition and reinstatement of trading . . . condition, among others, have not been satisfied by CapGain." *Id.*

CapGain and Knight then filed the present suit in October 2015, each alleging a separate claim for breach of contract. Plaintiffs contend that Landmaster had no right to terminate the contract because, as of the date of the termination letter, it had not performed its own obligations under the term sheet extension agreement. Compl. ¶¶ 10, 15–16. CapGain contends that it has performed under the agreement because it still intends to complete the transaction as contemplated in the documents. *Id.* ¶ 14. CapGain requests specific performance of the agreement, additional injunctive relief, and $14.9 million in actual damages. Knight contends that he has completed all of his

3

obligations under the agreement. *Id.* ¶ 22. He requests specific performance, additional injunctive relief, and $380,000 in actual damages.

In August 2016, Landmaster served plaintiffs with requests for admission under Federal Rule of Civil Procedure 36. The following requests are particularly relevant for purposes of this motion:

> REQUEST NO. 5: Admit that the CapGain audit was not completed prior to June 15, 2015, as required by the Term Sheet Extension Agreement, recited in paragraph 4.A. of that Extension Agreement, attached to the Complaint as Exhibit C.
>
> REQUEST NO. 6: Admit CapGain had not accomplished reinstatement of trading by June 15, 2015, as required by paragraph 4.B. of the Term Sheet Extension Agreement attached to the Complaint as Exhibit C.
>
> REQUEST NO. 7: Admit that CapGain did not complete the 10:1 rollback by June 15, 2015, as required by paragraph 4.D. of the Term Sheet Extension Agreement attached to the Complaint as Exhibit C.
>
> REQUEST NO. 8: Admit that CapGain did not complete the forms to accomplish completion of the 10:1 rollback by June 15, 2015, as set forth in paragraph 4.D. of the Term Sheet Extension Agreement attached to the Complaint as Exhibit C.

Def.'s Mot. for Summ. J. on Pls.' Compl., Ex. C (Requests for Admission) at 2. Plaintiffs failed to respond to these requests within the 30-day window provided by Rule 36. *See* Fed. R. Civ. P. 36(a)(3). Thus the requests were deemed admitted. *Id.*

In January 2017, Landmaster filed the present motion for summary judgment. Landmaster contends that, based on the matters deemed to be admitted due to plaintiffs' failure to respond, plaintiffs cannot prove the elements of a breach of contract claim. Specifically, Landmaster contends that the admission of requests 5, 6, 7, and 8 leaves no dispute regarding the fact that plaintiffs did not perform as required under the contract.

In response, plaintiffs filed two motions, one asking the Court to re-open

discovery and one asking to withdraw the deemed admissions. See dkt. nos. 72–73. Plaintiffs also filed a response to Landmaster's motion for summary judgment. The Court issued an order stating that it would grant plaintiffs' motion to withdraw the deemed admissions only if plaintiffs reimbursed Landmaster for the costs it incurred in preparing its motion for summary judgment. Dkt. no. 88. The Court continued the motion for summary judgment pending final determination of the motion to withdraw admissions and ordered plaintiffs to tender payment to Landmaster in the amount of $5,425 no later than April 18, 2017. Id. The Court later extended this deadline to April 28. Dkt. no. 99. Plaintiffs failed to tender payment by the extended deadline, and the Court therefore denied their motion to withdraw the admissions. Dkt. no. 106.

## Discussion

The Court now addresses plaintiffs' motion to re-open discovery and Landmaster's motion for summary judgment.

**A.　Motion to re-open discovery**

Plaintiffs ask the Court to re-open discovery, claiming that Landmaster failed to respond to its requests for interrogatories and production before the cut-off date and that plaintiffs should not be penalized for this failure. The Court finds, however, that plaintiffs failed to diligently pursue their discovery requests. Specifically, their motion to compel should have been filed before the fact discovery cutoff date of December 21, 2016, but they did not file the motion until more than two months after that, in late February 2017. The Court declines plaintiffs' request to re-open discovery.

**B.　Motion for summary judgment**

Landmaster argues that it is entitled to summary judgment because plaintiffs

cannot meet each element of a claim for breach of contract. Specifically, Landmaster argues that plaintiffs' deemed admissions conclusively establish that CapGain failed to perform as required under the contract.

When considering a motion for summary judgment, the Court construes all facts and draws reasonable inferences in favor of the non-moving party. *Greenberger v. GEICO Gen. Ins. Co.*, 631 F.3d 392, 396 (7th Cir. 2011). Summary judgment is appropriate where there is no genuine dispute of material fact and the moving party is entitled to judgment as a matter of law. *Id.* Further, matters deemed to be admitted under Federal Rule of Procedure 36 are conclusively established for the purposes of summary judgment. *See* Fed. R. Civ. P. 36(b); *Kalis v. Colgate-Palmolive Co.*, 231 F.3d 1049, 1059 (7th Cir. 2000). Thus matters deemed to be admitted cannot be genuinely in dispute.

To sustain their breach of contract claim under Illinois law, plaintiffs must show "(1) the existence of a valid and enforceable contract; (2) substantial performance by the plaintiff; (3) a breach by the defendant; and (4) resultant damages." *TAS Distrib. Co., Inc. v. Cummins Engine Co., Inc.*, 491 F.3d 625, 631 (7th Cir. 2007). Landmaster argues that plaintiffs' deemed admissions conclusively show that CapGain did not perform under the contract and thus that no reasonable jury could conclude that plaintiffs have met this element of their claims. The parties' dispute therefore hinges on what performance is required under the term sheet and the term sheet extension agreement. Landmaster contends that CapGain was required to perform certain obligations by June 15, 2015. Plaintiffs contend that the contract permitted performance after this deadline as long as Landmaster had not yet performed its own obligations

6

under the contract. The Court must first determine what performance the contract requires before determining if a genuine dispute exists regarding whether CapGain performed under the contract.

### 1. Contract interpretation

Under Illinois law, contract interpretation is matter of law appropriate for determination by the court only when the contract is unambiguous. *In re Duckworth*, 776 F.3d 453, 456 (7th Cir. 2014); *Air Safety, Inc. v. Teachers Realty Corp.*, 185 Ill. 2d 457, 462, 706 N.E.2d 882, 884 (1999). Whether an ambiguity exists is a question of law determined by the court without any extrinsic evidence. *G3 Analytics, LLC v. Hughes Socol Piers Resnick & Dym Ltd.*, 2016 IL App (1st) 160369, ¶ 15, 67 N.E.3d 940, 944. Contract interpretation is a question of fact only if the court finds that the language is susceptible to more than one meaning. *Air Safety*, 185 Ill. 2d at 462, 706 N.E.2d at 884. Disagreement among the parties regarding the meaning of terms does not, without more, render a contract ambiguous. *G3 Analytics*, 2016 IL App (1st) 160369 at ¶ 15.

The contract is unambiguous regarding the deadline for CapGain's performance. The term sheet extension agreement clearly states that "CapGain will be held to" a completion date of June 15, 2015. Term Sheet Extension at 1. It goes on to require "[c]ompletion of the CapGain Audit prior to June 15, 2015" and "[o]n or before June 15, 2015 reinstatement of trading." *Id.* The contract therefore unambiguously requires CapGain to complete these tasks by June 15.

Plaintiffs' argument otherwise is unpersuasive. The Court first notes that plaintiffs do not contend that the agreement is ambiguous or that interpretation of its terms should be a question of fact. Rather, plaintiffs contend that the "unambiguous

wording of the express [termination] condition" in the term sheet extension agreement supports their interpretation. Pls.' Resp. at 11; *see also id.* at 5 ¶ 1. They also state that "a very specific modifier . . . allowed the parties to continue working on the performance of those terms post June 15, 2015." *Id.* at 12. Thus plaintiffs appear to agree that the contract is unambiguous and that interpretation of the contract is a question of law for the Court.

Plaintiffs argue that the agreement permits CapGain to complete performance after June 15 so long as Landmaster has not yet completed its own obligations. In support, plaintiffs point to the agreement's termination provision. The provision indicates that "neither party may terminate the agreement and it does not become null and void until June 15, 2015 and in the event that the terminating party has dutifully completed their own requirements." *Id.* But this term does not negate the due dates established in the other sections. It merely denies Landmaster the ability to terminate the agreement in the event that CapGain fails to perform by the deadline unless Landmaster has itself fully performed. The fact that Landmaster does not have the right to terminate the contract until it has performed does not necessarily indicate that CapGain's performance is likewise not due until Landmaster performs. Thus the termination provision does not excuse CapGain from completing the audit or reinstating trading by June 15. In sum, the term sheet extension agreement unambiguously establishes June 15 as the deadline for CapGain's performance.

### 2. Performance

The Court now turns to whether a genuine dispute exists regarding whether CapGain performed under the agreements. As previously discussed, a plaintiff bringing

a breach of contract claim under Illinois law must show that it performed under the contract in order to prevail. *TAS Distrib.*, 491 F.3d at 631. The Court has concluded that the contract unambiguously required CapGain to complete an audit and reinstate trading by June 15. Plaintiffs have conceded, through their deemed admissions, that CapGain did not do so. In requests for admission 5 and 6, Landmaster asked plaintiffs to admit that CapGain did not complete either task by June 15. Requests for Admission at 2. As discussed earlier, plaintiffs failed to respond and therefore these statements are deemed admitted. Fed. R. Civ. P. 36(a)(3), (b); *Momient v. Northwest Collectors, Inc.*, 666 F. App'x 531, 536 (7th Cir. 2016). Further, plaintiffs expressly acknowledged in their response to Landmaster's interrogatories that these tasks were not completed by the deadline. Plaintiffs indicated that the audit was not completed until March 1, 2016. Def.'s Mot. for Summ. J. on Pls.' Compl., Ex. E (Pls.' Resp. to Interrogs.) ¶ 2. Plaintiffs further indicated that CapGain did not receive a revocation of the trading halt until September 29, 2016 and, even then, it received only a partial revocation. *Id.* ¶ 3. For these reasons, no reasonable jury could conclude that CapGain performed as required under the contract.

Plaintiffs respond by arguing that Landmaster breached the agreement when it sent a termination letter on September 29, 2015 without completing its own obligations. *See* Pls.' Resp. to Interrogs. ¶ 3; Pls.' Resp. at 11. Even if this allegation is correct, it is irrelevant. A defendant's breach of the agreement is only one element of a breach of contract claim. Therefore even if a genuine dispute exists regarding whether Landmaster breached the contract, this does not save plaintiffs from the fact that no genuine dispute exists regarding whether CapGain performed under the contract.

Because no reasonable jury could conclude that CapGain performed by June 15 as required, Landmaster is entitled to summary judgment on plaintiffs' breach of contract claim.

CapGain further contends that Landmaster's termination letter constitutes anticipatory repudiation of the contract and therefore excused CapGain from further performance. Pls.' Resp. at 11. But anticipatory repudiation excuses the other party only from its *remaining* duties under the contract. *See Arlington LF, LLC v. Arlington Hosp., Inc.*, 637 F.3d 706, 716 (7th Cir. 2011). Landmaster did not repudiate the contract—if it did so at all—until September 29. The letter would therefore excuse CapGain only from obligations due after this date. A termination letter sent in September does not excuse CapGain's failure to perform obligations that were due three months earlier in June.

In sum, plaintiffs have admitted that CapGain failed to perform its obligations as required by the contract. Because there is no genuine dispute regarding this element of CapGain's breach of contract claim, the Court grants summary judgment in favor of Landmaster.

### 3. Knight's claim

Knight also brings his own claim for breach of contract due to Landmaster's failure to purchase his CapGain stock for $380,000. Knight is not a party to either the term sheet or the term sheet extension agreement. Under Illinois law, however, an intended third-party beneficiary of the contract may also bring a claim for breach of contract. *Kaplan v. Shure Bros., Inc.*, 266 F.3d 598, 602 (7th Cir. 2001). The Court determined in a previous ruling that Knight has adequately alleged that he was an

intended third party beneficiary of the contract. *See* dkt. no. 21 at 8. And the term sheet itself—which requires Landmaster to purchase Knight's shares of CapGain stock for $380,000—provides evidence from which a reasonable jury could conclude that CapGain and Landmaster intended that Landmaster be liable to Knight for this obligation.

But Knight's claim for breach of contract fails for the same reason as CapGain's claim. As a third-party beneficiary, Knight cannot possibly prevail on his claim unless he or CapGain demonstrates the elements of a breach of contract claim, including CapGain's performance. The Court has already determined that no reasonable jury could conclude that CapGain performed as required under the contract. It follows that Knight cannot succeed on his claim against Landmaster. Landmaster is therefore entitled to summary judgment on Knight's claim.

## Conclusion

For the foregoing reasons, the Court denies plaintiffs request to re-open discovery [dkt. no. 72] and grants Landmaster's motion for summary judgment [dkt. no. 61]. The Court denies Landmaster's motion to strike certain affirmative defenses in plaintiffs' answer to Landmaster's counterclaim [dkt. no. 94], without commenting on whether CapGain will be able to establish those defenses. The case is set for a status hearing, to be conducted by telephone, on June 13, 2017 at 8:30 a.m. Chicago time, to set a trial date on the counterclaim. The Court will address with counsel at that time how and when to proceed on Landmaster's motion for sanctions. For the telephone status hearing, both sides' counsel should call in at or before the appointed time to

888-684-8852, access code 7461053.

_____
MATTHEW F. KENNELLY
United States District Judge

Date: June 7, 2017